UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF MISSOURI
Eastern DIVISION

Judy Singh

*(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

**v.**

Ascension Health Alliance
d/b/a Ascension

*(Write the full name of each defendant. The caption must include the names of all of the parties. Fed. R. Civ. P. 10(a). Merely listing one party and writing "et al." is insufficient. Attach additional sheets if necessary.)*

**Complaint for a Civil Case**

Case No.
*(to be assigned by Clerk of District Court)*

Plaintiff requests trial by jury:
☐ Yes ☒ No

## CIVIL COMPLAINT

*NOTICE:*

*Federal Rule of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should not contain: an individual's full social security number or full birth date, the full name of a person known to be a minor, or a complete financial account number. A filing may include only: the last four digits of a social security number, the year of an individual's birth, a minor's initials, and the last four digits of a financial account number.*

*Except as noted in this form, plaintiff need not send exhibits, affidavits, grievance or witness statements, or any other materials to the Clerk's Office with this complaint.*

*In order for your complaint to be filed, it must be accompanied by the filing fee or an application to proceed without prepaying fees or costs.*

# I. The Parties to This Complaint

## A. The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Judy Singh |
| Street Address | 651 S. Sutton Road, Suite 192 |
| City and County | Streamwood, Cook County |
| State and Zip Code | Illinois 60107 |
| Telephone Number | (630) 313-9100 |
| E-mail Address | judy.singh@phantomcoverage.org |

## B. The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title (if known). Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | Ascension Health Alliance d/b/a Ascension |
| Job or Title | Plan Administrator |
| Street Address | 4600 Edmundson Road |
| City and County | St. Louis, St. Louis County |
| State and Zip Code | Missouri 63134 |
| Telephone Number | (314) 733-8000 |
| E-mail Address | Christine.McCoy2@ascension.org (Chief Legal Officer) |

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant. If you are suing for violation of your civil rights, you must state whether you are suing each defendant in an official capacity, individual capacity, or both.)*

## II. Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power). Generally, only three types of cases can be heard in federal court. Provide the information for this case. *(Include all information that applies to your case)*

### A. Federal question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

ERISA, 29 U.S.C. §§ 1024(b)(4), 1104(a)(1)(A)-(B), 1132(a)(1)(A), 1132(a)(3), and 1132(c)(1)(B). Jurisdiction under 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1).

### B. Suit against the Federal Government, a federal official, or federal agency

List the federal officials or federal agencies involved, if any.

### C. Diversity of Citizenship

These are cases in which a citizen of one State sues a citizen of another State or nation, and the amount at stake is more than $75,000. In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

1. The Plaintiff(s)

The plaintiff, *(name)* ______________________, is a citizen of the State of *(name)* ______________________.

*(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2. The Defendant(s)

If the defendant is an individual

The defendant, *(name)* ______________________________, is a citizen

of the State of *(name)* ______________________________ *Or* is a citizen

of *(foreign nation)* ______________________________.

If the defendant is a corporation

The defendant, *(name)* ______________________________.

is incorporated under the laws of the State of *(name)*

______________________________, and has its principal place of

business in the State of *(name)* ______________________________ *Or*

is incorporated under the laws of the State of *(foreign nation)*

______________________________, and has its principal place

of business in *(name)* ______________________________.

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3. The Amount in Controversy

The amount in controversy----the amount the plaintiff(s) claims the defendant(s) owes or the amount at stake----is more than $75,000, not counting interest and costs of court, because *(explain)*:

## III. Statement of Claim

Type, or neatly print, a short and plain statement of the **FACTS** that support your claim(s). For every defendant you have named in this complaint, you must state what he or she personally did to harm you. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Do not make legal arguments, or cite court cases or statutes. You may attach additional pages if necessary.

Your statement of claim must include all of the following information:

1. What happened to you?
2. When did it happen?
3. Where did it happen?
4. What injuries did you suffer?
5. What did each defendant personally do, or fail to do, to harm you?

See the attached continuation, paragraphs 1–53, including Counts I–IV.

Yes as to Count IV. Judy's November 13, 2026 confirmation listed her daughter as a covered dependent for Family AD&D beginning January 1, 2027. Judy does not know whether Ascension and its current insurer compared the enrollment and eligibility records. She intends to renew each year while employed. An unresolved discrepancy could leave her unaware of a gap until it is too late to correct her election or seek other coverage. See paragraphs 50–53.

## IV. Relief

State briefly and precisely what damages or other relief you want from the Court. Do not make legal arguments.

See the attached Prayer for Relief, A–G. Judy seeks a statutory penalty, equitable relief including surcharge, and prospective relief concerning her Family AD&D election.

Do you claim the wrongs alleged in your complaint are continuing to occur now?

Yes ☒ No ☐

Do you claim actual damages for the acts alleged in your complaint?

Yes ☒ No ☐

Do you claim punitive monetary damages?

Yes ☐ No ☒

If you indicated that you claim actual damages or punitive monetary damages, state the amounts claimed and the reasons you claim you are entitled to recover these damages.

Count II seeks $508,200 for lost insurance protection caused by the alleged fiduciary breaches. Count III seeks equitable surcharge for additional financial losses. The prayer credits any actual recovery for the same loss. See paragraphs 30, 41–49 and Prayer B–C.

## V. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

I declare under penalty of perjury that the foregoing is true and correct.

Signed this 23rd day of November, 20 26.

Signature of Plaintiff(s) Judy Singh

Judy Singh, Plaintiff pro se
651 S. Sutton Road, Suite 192, Streamwood, IL 60107
(630) 313-9100 | judy.singh@phantomcoverage.org

## I. NATURE OF THE ACTION

1. Plaintiff Judy Singh brings this action against Ascension Health Alliance, the administrator of the Ascension Supplemental Accidental Death and Dismemberment Plan. Through the MyAscension portal, Plaintiff elected the Family option under the Supplemental AD&D Plan and listed her husband and daughter as dependents. The portal displayed an effective date for that election. Ascension deducted Family AD&D premiums from her pay for approximately three years and remitted them to Prudential, which accepted them through bulk payments. The Family AD&D election display did not warn her that a spouse insured as an employee under the same Group Contract was ineligible for dependent coverage. After her husband died in an accident, Prudential denied her dependent AD&D claim, citing his basic employee AD&D coverage under that contract.

2. In its June 26, 2026 order granting summary judgment to Prudential, the court stated that Ascension operated the enrollment portal and sent Prudential bulk premium payments. Addressing responsibility for enrollment, the court stated that, on the record before it, Plaintiff's situation resulted "[possibly] from the failure of [Singh's] employer to fulfill its obligations." *Singh v. Prudential Insurance Co. of America,* No. 4:24-cv-01644-JMD, ECF No. 91 at 2, 5, 7. In light of that observation, Plaintiff brings this action for equitable relief under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), based on Ascension Health Alliance's administration of her Family AD&D election, coordination of enrollment and employee-coverage information with Prudential, and communications with her at initial enrollment and subsequent renewals.

3. Plaintiff also seeks a statutory penalty for Ascension's failure to furnish the governing Supplemental AD&D Plan after her written request. On July 15, 2024, her attorney, Michael Hoover, sent Ascension a request for applicable insurance policies and policy documents. On July 29, 2024, Laura Haran, Ascension's senior director of benefits, answered Hoover's employment-status question. Her reply left Plaintiff's enclosed request for policy

documents unanswered. On information and belief, neither Haran nor anyone else acting for Ascension sent Hoover the governing Supplemental AD&D Plan within 30 days after Ascension received the request.

## II. JURISDICTION AND VENUE

4. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1) because this action arises under ERISA.

5. Venue is proper under 29 U.S.C. § 1132(e)(2). The 2022 summary plan description lists Defendant as Plan Administrator at 4600 Edmundson Road, St. Louis, Missouri 63134. On information and belief, Defendant administers the Plan in this District. Amended Plan § 7.3 also designates the Eastern District of Missouri for actions relating to or arising under the Plan.

6. Defendant's administration of the Plan in this District and its conduct of the functions challenged here support personal jurisdiction.

## III. PARTIES AND PLAN

7. Plaintiff is an Illinois resident and has worked for Ascension for 25 years. She participated in the Plan through her employment with Ascension Illinois and was the beneficiary of the dependent AD&D election on her husband. Plaintiff brings these claims on her own behalf as a participant and beneficiary under ERISA. If counsel appears and the evidence supports class treatment, Plaintiff may seek to amend Count IV to pursue class-wide injunctive relief and ask the Court to sever that count into a separate action.

8. Defendant Ascension Health Alliance, doing business as Ascension, is the designated Plan Administrator and a named fiduciary. Prudential's Group Contract 50583 lists January 1, 2011 as its contract date. The 2022 and 2023 amendments to that contract identify Ascension Health Alliance as the Contract Holder.

9. The Plan is an employee welfare benefit plan within 29 U.S.C. § 1002(1).

10. Defendant possessed discretionary authority and responsibility over the administrative functions described below and, through its benefits personnel and systems, exercised those functions. It was a fiduciary within 29 U.S.C. § 1002(21)(A) with respect to the challenged conduct.

## IV. DEFENDANT'S ASSIGNED ADMINISTRATIVE FUNCTIONS

11. Ascension and Prudential were named fiduciaries responsible for their assigned functions. Prudential was the Plan's Claims Representative because it insured the benefits at issue (§ 1.1). Ascension has day-to-day administrative responsibility and discretion to interpret the Plan and decide whether employees may become or remain participants (§§ 5.1–5.3). Ascension was responsible for keeping participation records and complying with reporting and disclosure requirements (§ 5.6).

12. The Plan gave Prudential discretionary authority "to determine whether a Participant is eligible to receive or to continue to receive a benefit under the Plan" (§ 5.4(b)(1)) and, separately, "to make all claims determinations in accordance with Article 3" (§ 5.4(b)(2)). The Plan authorized both Ascension and Prudential to "reconcile any inconsistency" within their respective areas of administration (§§ 5.3(b), 5.4(a)). Prudential also had to maintain all records relating to its duties under § 5.4 (§ 5.4(b)(4)). Section 5.4(c) required each participating employer to supply full and timely employee and participant information to Ascension as Plan Administrator and Prudential as Claims Representative, as those fiduciaries designated.

13. The 2019 and 2022 summary plan descriptions name Ascension Health Alliance as Plan Administrator and state that the plans are "jointly administered by Ascension and the Prudential Insurance Company of America." They also state that Ascension delegated "daily administration of the Plans" to Prudential.

14. On information and belief, when Plaintiff elected and renewed Family AD&D for the 2021–2023 plan years, Prudential knew that the governing Supplemental AD&D Plan

designated it as a named fiduciary and gave it discretionary authority to determine benefit eligibility (§ 5.4(b)(1)).

## V. ENROLLMENT, COMMUNICATIONS, AND RESULTING HARM

### (a) Initial enrollment and product-specific messages

15. In November 2020, Plaintiff used MyAscension to elect Family AD&D for her husband and her daughter. The portal accepted her election and showed it as active with a January 1, 2021 effective date. Ascension's benefits system recorded the same start date for her Family AD&D election. The portal gave no warning that her husband's employee coverage could make him ineligible as a dependent.

16. Plaintiff and her husband were both Ascension employees. The official summary plan descriptions describe basic AD&D as automatic, employer-paid coverage for eligible employees and Supplemental Family AD&D as elected, employee-paid coverage. Ascension's benefits system listed her husband as her spouse under her Family AD&D election. The Group Insurance Contract Holder Statement in Prudential's claim file, signed December 12, 2023, lists his basic employee AD&D coverage under Group Contract 50583 as effective January 1, 2021, the same effective date displayed for Plaintiff's Family AD&D election.

17. The 2021 confirmation from Ascension's enrollment system listed Plaintiff's Supplemental Life election as "Supplemental Life (Pending)" and displayed this notice: "The coverage amount listed above requires Evidence of Insurability (EOI). Prudential will notify you of the steps necessary to complete this process within 30 days. If EOI is approved, your coverage will become effective on the date shown above or the approval date whichever is later." The 2023 confirmation again marked Supplemental Life pending and named Prudential in the approval notice. Plaintiff received Prudential paperwork after each of her two Supplemental Life elections. On both occasions, she did not submit the required paperwork by the deadline, and payroll deductions for Supplemental Life did not begin.

18. On information and belief, Prudential supplied or approved the description of its evidence-of-insurability and approval process in the Supplemental Life notices Ascension displayed to Plaintiff.

19. On information and belief, Prudential provided or approved any carrier messaging Ascension displayed at enrollment for Family AD&D.

20. Before her husband's death, Plaintiff received no individualized notice from Ascension or Prudential that his employee coverage could make him ineligible for dependent AD&D.

**(b) Annual confirmations and coverage decisions**

21. Plaintiff had to make a new Family AD&D election during open enrollment for each plan year. Her confirmations for 2021, 2022, and 2023 listed Family AD&D and told her to take no further action if her benefit elections and personal information were correct. The general instructions on each confirmation gave the following January 1 as the effective date for that plan year's elections. The 2022 and 2023 confirmations showed the cost per pay period for Family AD&D and stated that the official Plan documents governed any conflict with the confirmations. When Plaintiff renewed her Family AD&D election in November 2021 and November 2022, her husband was working at Ascension and had basic employee AD&D coverage. At initial enrollment and at both renewals, the portal gave no warning that a spouse insured as an employee under the same Group Contract was ineligible for dependent coverage.

22. Plaintiff reasonably believed that the requirements for her husband's dependent coverage had been satisfied and that coverage was in effect because her Family AD&D election appeared on MyAscension with an effective date, Ascension continued deducting premiums from her pay, and she received no individualized warning to the contrary. She therefore did not shop for other insurance. If warned at enrollment or renewal that her husband's employee coverage could make him ineligible for dependent AD&D, Plaintiff would have shopped for other coverage.

**(c) Records and information exchange**

23. Section H of the Group Contract provided that the Contract Holder or Prudential, as they agreed, would keep the record of insured employees. The Contract Holder had to send "the data required by Prudential to perform its duties under the Group Contract" at times set by Prudential. Records of the Contract Holder and participating employers bearing on the insurance had to be open to Prudential's inspection at any reasonable time. For dependent Supplemental AD&D, Prudential's certificate stated, "If offered, the amount for which you enroll will be recorded by your Employer and reported to Prudential."

24. Under the Group Contract's "Performance Levels" provision, Prudential and the Contract Holder were to set service standards from time to time and agree on how to determine whether those standards were met. Those standards could address plan administration and enrollment timeliness. Unless they agreed to another process or timeline, Prudential's performance was to be reviewed at the end of each calendar year.

25. For approximately three years, from January 2021 through her husband's death, Ascension's benefits system continued to list Plaintiff's husband as her dependent. Ascension deducted Family AD&D premiums from Plaintiff's pay and remitted them to Prudential in bulk. Prudential chose to accept those payments knowing they named no participant or dependent, even though Section H allowed it to specify the data it required to perform its duties.

26. For dependent AD&D, Prudential's claims manager described a system in which Prudential accepted Ascension's bulk payments blind to the identities of participants and dependents. He stated that the payments listed only the total number of covered lives. He also stated that, before a dependent AD&D claim was filed, Prudential did not have access to the employee's name, elections, or enrollment paperwork and first received the dependent's name when the claim was filed. According to the manager, Prudential did not know of

Plaintiff's dependent AD&D election before receiving her claim and made no eligibility decision on that election before reviewing the claim.

**(d) Claim denial and resulting harm**

27. Plaintiff's husband died in an accident on December 2, 2023. Prudential denied the dependent AD&D claim by letter dated February 28, 2024, relying on his coverage under the same Group Contract as an employee.

28. On April 18, 2024, Plaintiff told the president and chief executive officer of Ascension Alexian Brothers that an HR specialist had explained Prudential's stated reason for the denial. She asked why no one had warned her before her husband died that his employee coverage could affect his eligibility as her Family AD&D dependent. On April 19, the president told Plaintiff he had referred her email to HR, including that specialist. In a separate April 23 reply to Plaintiff, the specialist wrote that a supervisor had told Plaintiff that the insurance company and TenCode made decisions on "life insurance claims and payouts." Neither reply identified who was responsible for Family AD&D eligibility warnings at enrollment or renewal.

29. Plaintiff appealed Prudential's denial on August 21, 2024. Prudential denied that appeal by letter dated January 10, 2025. Ascension identified no separate procedure for reviewing its handling of Plaintiff's enrollment or renewals.

30. After Prudential's February 28, 2024 denial, Plaintiff drew on retirement funds she otherwise would have retained if the expected insurance proceeds had been available. She has postponed recommended knee surgery because, without the insurance proceeds she expected, she cannot meet her household expenses on partial pay during recovery.

**VI. RELATED ACTION AND PROCEDURAL BASIS**

31. Ascension Health Alliance was not a defendant in the Prudential action. Plaintiff's appeal in that case is pending in the Eighth Circuit, No. 26-3029.

32. Before her husband died, Plaintiff did not know that his basic employee AD&D coverage could affect her dependent election. Counts II and III challenge Ascension's handling of Plaintiff's November 2020 enrollment and both annual renewals, along with its ongoing administration of her election and its communications before the loss.

33. The June 26, 2026 order prompted Plaintiff to ask Ascension about its role in enrollment. On June 29, the chief nursing officer at Alexian Brothers directed her to the hospital's HR business partner. On July 1, Plaintiff asked him who was responsible for verifying Family AD&D eligibility at enrollment in 2021–2023. On July 6, she sent the order to Ascension's senior director of compliance and asked whether Prudential had supplied or approved the portal language for dependent coverage and what eligibility data, if any, Ascension had sent Prudential. On July 13, HR sent Plaintiff a booklet it identified as the 2019 summary plan description and closed its case with a referral to Prudential, without identifying who was responsible in 2021–2023.

## VII. COUNT I — FAILURE TO FURNISH THE GOVERNING SUPPLEMENTAL AD&D PLAN

### ERISA §§ 104(b)(4), 502(a)(1)(A), and 502(c)(1)(B)

34. Plaintiff incorporates paragraphs 4–9. The 2022 summary plan description says participants may obtain copies of governing documents and the updated summary by written request to the Plan Administrator. The governing Supplemental AD&D Plan states that it is to be read with Prudential Policy No. 50583. On July 15, 2024, while preparing Plaintiff's administrative appeal, her attorney, Michael Hoover, wrote to Christine Kocot McCoy, Ascension Health's general counsel, at the St. Louis, Missouri address listed for Defendant as Plan Administrator. Hoover enclosed Plaintiff's signed Notice of Representation. In that notice, Plaintiff identified Defendant as the Contract Holder, listed Policy No. 50583, and asked the employer, among others, to provide him with "a copy of all applicable insurance policies and policy documents, as well as all other documents related to this claim."

35. On July 29, 2024, Laura Haran, signing as Ascension Health's senior director of benefits, acknowledged Hoover's July 15 letter to the general counsel. Haran answered Hoover's question about Plaintiff's husband's employment status for insurance purposes. Her reply did not address the enclosed request for policy documents or identify the separate Supplemental AD&D Plan.

36. On information and belief, Defendant received the enclosed request, and neither Haran nor anyone else acting on Defendant's behalf furnished the governing Supplemental AD&D Plan to Hoover or Plaintiff within 30 days of receipt.

37. In early September 2025, Plaintiff called Ascension HR to request her Supplemental AD&D Plan documents. On September 3, 2025, HR opened ticket HRC7805488 concerning her AD&D benefit and emailed her a link labeled "Life Insurance, AD&D, Supplemental Plans SPD," quoting the rule on double coverage. That September, HR responded to Plaintiff's telephone request by mailing her a booklet bearing a January 1, 2011 program date.

38. On February 5, 2026, Prudential filed Laura Haran's declaration in support of summary judgment. Identifying herself as Ascension Health Alliance's senior director of benefits, Haran stated, "Employees can access the plan documents on request to Ascension." Prudential cited that statement to assert that Ascension employees could obtain "all plan documents applicable to the dependent AD&D coverage" by requesting them from Ascension. The declaration did not identify the separate governing Supplemental AD&D Plan. Plaintiff pursued her administrative appeal and litigated the Prudential action through summary judgment without the separate governing Plan. Plaintiff argued at summary judgment that Prudential had to verify eligibility. She could not cite Article 5, § 5.4(b)(1), which expressly gave Prudential discretion to determine benefit eligibility.

39. After judgment, Plaintiff again requested her Supplemental AD&D plan documents from Ascension HR. On July 6, 2026, HR emailed her the same 2011 booklet and

said it could provide no further documentation about determination and eligibility beyond that booklet and her confirmation statements.

40. On July 16, 2026, Ascension's outside counsel responded to Plaintiff's July 8 written request by furnishing the separate governing Plan and the official 2019 and 2022 summary plan descriptions applicable to her elections. Counsel stated that the 2011 booklet Plaintiff attached to her July 8 email was inapplicable during 2021–2023. Plaintiff first received the separate Plan containing Article 5 two years after Hoover sent Ascension her signed request and approximately ten months after she called Ascension HR for the Plan documents.

**VIII. COUNT II — EQUITABLE RELIEF FOR LOST INSURANCE PROTECTION**

**ERISA §§ 404(a)(1)(A)–(B) and 502(a)(3)**

41. Plaintiff incorporates paragraphs 4–33.

42. In administering Plaintiff's election and communicating with her about it, Ascension had to act prudently and solely in the interests of participants and beneficiaries. 29 U.S.C. § 1104(a)(1)(A)–(B).

43. Ascension processed Plaintiff's initial Family AD&D election and both annual renewals through MyAscension. At each renewal, Ascension's system listed Plaintiff's husband as her dependent while he was working for Ascension and insured as an employee under the same Group Contract. On information and belief, Ascension did not check at initial enrollment whether her husband would also be insured as an employee when her election took effect, compare her dependent listing with his employee-coverage records at either renewal, or refer the potential conflict to Prudential at any of those times.

44. Under Section H, Prudential could specify the data it required from Ascension to perform its duties, set the times for sending those data, and inspect records bearing on the insurance. Prudential's claims manager stated that Ascension did not notify Prudential of her

husband's employee coverage at enrollment or while she paid premiums, and that Prudential made no pre-loss eligibility determination on her election. On information and belief, Prudential did not request participant or dependent records from Ascension to exercise its discretion to determine benefit eligibility at or near Plaintiff's initial Family AD&D enrollment or either annual renewal.

45. Ascension displayed an effective date for the Family AD&D election in which Plaintiff listed her husband as a dependent. The display did not warn that a spouse could not be covered as a dependent while insured as an employee under the same Group Contract.

46. Had either fiduciary warned her of the potential eligibility conflict at enrollment or renewal, Plaintiff would have sought a cure for any gap in her husband's dependent AD&D protection.

47. Plaintiff seeks equitable relief under § 1132(a)(3), including surcharge, against Ascension for lost insurance protection caused by its breaches in administration, coordination with Prudential, and communication. She seeks $508,200, the amount of the dependent AD&D benefit identified in Prudential's denial letter.

## IX. COUNT III — EQUITABLE SURCHARGE FOR ADDITIONAL CONSEQUENTIAL FINANCIAL LOSS

### ERISA §§ 404(a)(1)(A)–(B) and 502(a)(3)

48. Plaintiff incorporates paragraphs 4–33 and 41–47.

49. Plaintiff seeks equitable surcharge under § 1132(a)(3) for additional consequential financial losses caused by Ascension's breaches, beyond the value of the lost insurance protection sought in Count II. The requested surcharge includes finance charges, late fees or penalties, increased borrowing costs, other financial effects of impaired credit, and out-of-pocket expenses.

## X. COUNT IV — THREATENED BREACH OF FIDUCIARY DUTY IN FAMILY AD&D ENROLLMENT

**ERISA §§ 404(a)(1)(B) and 502(a)(3)(A)**

50. Plaintiff incorporates paragraphs 7–10, 15–16, and 20–27. Her daughter is the only dependent listed on her current Family Supplemental AD&D election.

51. The general enrollment instructions in Ascension's 2026 Benefits Overview require employees to provide identifying information for dependents, including name and date of birth, and to complete dependent verification by the deadline Ascension sets. The guide does not explain whether Ascension or its insurer compares those records with the Family AD&D eligibility requirements or how an employee would learn of an unresolved discrepancy while the election can still be changed.

52. Ascension's November 13, 2026 confirmation told Plaintiff she had completed her open enrollment elections. It listed her daughter under "Covered Dependents" for Supplemental Family AD&D with a January 1, 2027 start date. The confirmation said her elections would become final when open enrollment closed unless she experienced a qualifying life event.

53. Plaintiff does not know whether Ascension and its current insurer exchanged or compared enrollment and eligibility records for her 2027 Family AD&D election. She intends to elect Family AD&D at the next open enrollment and each year thereafter while she works for Ascension. If an eligibility discrepancy again goes unreported at renewal, Plaintiff may rely on her Family AD&D election and forgo other coverage. She may learn of the discrepancy only after a loss, too late to correct her election or insure against that loss.

## XI. PRAYER FOR RELIEF

Plaintiff requests judgment:

A. Awarding Plaintiff the daily penalty the Court finds appropriate under 29 U.S.C. § 1132(c)(1)(B) for Ascension's failure, as Plan Administrator, to furnish the governing Supplemental AD&D Plan within 30 days after receipt of her written request (Count I).

B. Determining that Ascension breached its fiduciary duties as alleged and awarding Plaintiff $508,200 in equitable relief, including surcharge, for the resulting loss of insurance protection (Count II).

C. Awarding Plaintiff equitable surcharge for additional consequential financial losses caused by Ascension's breaches (Count III). Credit any amount Plaintiff actually recovers for the same loss once against the corresponding award.

D. Awarding appropriate prejudgment interest and postjudgment interest as authorized by law;

E. Ordering Ascension to maintain and use the following procedure with its current Family Supplemental AD&D insurer. The procedure must apply to Plaintiff's election and, to the extent the Court finds necessary to give her timely notice and an opportunity to correct her election or seek other coverage, to elections administered through the same process.

(i) Reconcile enrollment and eligibility records at enrollment, at each renewal, and when a change in eligibility terms affects an election. Between renewals, review potential eligibility changes indicated by plan records or by information reported to Ascension or its insurer about a listed dependent's circumstances.

(ii) Refer discrepancies to the fiduciary responsible for deciding eligibility. Notify Plaintiff of unresolved issues and available corrective steps while she can still act, and communicate the decision when made. When a coverage end date can reasonably be determined in advance, notify the participant in time to consider other coverage.

(iii) By dates the Court sets, complete the first reconciliation covering Plaintiff's election and then file a declaration describing how Ascension implemented the procedure. For Plaintiff's election, identify the records compared, the comparison dates, each discrepancy found, how Ascension addressed it, and whether and when it notified her.

F. Awarding costs and reasonable attorney's fees to the extent authorized by 29 U.S.C. § 1132(g)(1); and

G. Granting other appropriate equitable relief necessary to redress the pleaded violations.